IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANCIS KYEM**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-5577-KSM** |
| **MERAKEY USA, et al.**, | |
| Defendants. | |

**MEMORANDUM**

**MARSTON, J.**                                                                 **April 30, 2021**

Plaintiff Francis Kyem is employed as a Behavioral Specialist Consultant with Defendant Merakey Children's Services (a subsidiary of Defendant Merakey USA) (collectively, "Merakey").  (Doc. No. 1.)  Mr. Kyem alleges that he was an hourly employee, but that Merakey failed to appropriately compensate him for all the hours that he worked; specifically, he alleges that time spent on certain "non-billable" work went uncompensated.  Mr. Kyem brings this lawsuit, individually and on behalf of others similarly situated, alleging that Merakey's policy or practice of not paying employees for "non-billable" work violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100, *et* seq.  (*Id.* at ¶ 1.)  Presently before the Court is Mr. Kyem's motion for preliminary certification of this matter as a collective action and approval of notice to the putative collective.  (Doc. No. 24.)  For the reasons that are discussed below, the motion will be granted in part and denied in part.

I.

Taking the allegations in Mr. Kyem's complaint and affidavits as true, the facts of this

matter are as follows.

Mr. Kyem was hired as a Behavioral Specialist Consultant ("BSC") in March 2013[1] by

Merakey Children's Services, a non-profit corporation owned and operated by Merakey USA

(also a non-profit organization). (Doc. No. 1 at ¶¶ 10–11; Doc. No. 24-2 at p. 9, ¶ 2; Doc. No. 25

at p. 3.) BSCs "provide clinical behavior health services" to Merakey's clients—generally

schoolchildren located in the Philadelphia area. (See Doc. No. 1 at ¶ 34.) At some point, Mr.

Kyem earned his license and was promoted from a BSC to a Licensed Behavioral Specialist

Consultant ("LBSC"), which is the role he currently holds. (Doc. No. 24-2 at p. 10 ¶ 11, p. 12, ¶

23.) At all times during his employment, Mr. Kyem has been paid on an hourly basis. (Doc. No.

1 at ¶ 33.) Although his job title and hourly rate changed after he became an LBSC, Mr. Kyem's

"job duties remained effectively the same." (Doc. No. 24-2 at p. 12, ¶ 23.)

Even though Mr. Kyem is employed by Merakey Children's Services, he rarely spends

time in their offices.[2] (See Doc. No. 1 at ¶¶ 36, 44–45; Doc. No. 24-2 at p. 10, ¶ 11.) Rather,

before the COVID-19 pandemic, he generally reported directly to the specific school that he was

assigned to for the day. (See Doc. No. 1 at ¶ 44.) Sometimes, he was required to travel between

work locations. (See id. at ¶ 45.) Mr. Kyem's duties—like those of all BSCs and LBSCs—

include meeting with clients and their family members; meeting with school personnel;

communicating with clients, their families, and school personnel via telephone or email;

preparing or revising behavior modification plans; and creating progress notes. (Id. at ¶¶ 35, 39.)

---

[1] Plaintiff's complaint alleges that Plaintiff's employment began "in or around May 2012," (Doc. No. 1 at
¶ 32), yet Plaintiff's affidavit states he first began his employment "in or around March 2013." (Doc. No.
24-2 at p. 9, ¶ 2.) Plaintiff's affidavit is supported by his New Hire Form, which reflects that he was hired
on March 5, 2013. (Doc. No. 25 at p. 2.)

[2] During oral argument, Merakey's counsel noted that since March 2020 (the start of the COVID-19
pandemic), Mr. Kyem works remotely and has virtual meetings. (Hr'g Tr. at 17:12-13; 43:8.)

However, Merakey only bills some of these activities to their clients.  (Doc. No. 24-2 at p. 10, ¶ 8.)  It was Mr. Kyem's understanding that he would only be compensated for time he spent on billable activities, with the exception of time also spent on "occasional training and supervision." (*Id.* at ¶ 42; Doc. No. 24-1 at p. 5; *see also* Doc. No. 24-2 at pp. 9, ¶ 5.)

Accordingly, Mr. Kyem submitted timesheets documenting his specific hours for billable activities and the occasional training and supervision sessions.  (*See, e.g.*, Doc. No. 28-1 at pp. 58–59, ¶¶ 1–11.)  He did not do the same for non-billable work because Mr. Kyem understood it was Merakey's policy and practice to only compensate for direct service billable work and, when applicable, training and supervision.[3]  (Doc. No. 1 at ¶¶ 46–48; Doc. No. 24-2 at p. 9, ¶ 5.)  Mr. Kyem alleges that he regularly spends between ten and fifteen hours per week on non-billable work.  (Doc. No. 1 at ¶ 46.)  Mr. Kyem states that he regularly works between 45 and 55 hours a week when his non-billable hours are combined with his billable hours.  (*Id.* at ¶ 47.) Nonetheless, he was not compensated or paid overtime for his non-billable hours.  (*Id.* at ¶ 48.) Mr. Kyem claims that the same is true of all of Merakey's BSCs and LBSCs, as well as of their Mobile Therapists ("MTs") and Therapeutic Support Staff ("TSSs").  (*Id.* at ¶¶ 46–48.)

Mr. Kyem filed a collective and class action complaint on November 26, 2019, alleging that Merakey had violated his and others' rights under the FLSA and the PMWA, by refusing to compensate for overtime when the combination of billable and non-billable work exceeded 40 hours a week.  (*Id.*)  After an extension, Merakey answered the complaint on January 16, 2020. (Doc. No. 10.)  In their answer, Merakey asserted that Mr. Kyem, like all of Merakey's BSCs, LBSCs, MTs, and TSSs, was paid "on a fee for service basis,"[4] because he was an administrative

---

[3] As will be discussed in more detail below, Mr. Kyem placed a check mark next to "non-billable" work on his timesheet, rather than detailing the actual time spent on these activities.

[4] Employees paid on a "fee-for-service" basis are paid a set fee for performing a particular service, rather

or professional employee who was exempt from the minimum wage requirements of the FLSA and the PMWA.  (*Id.* at ¶¶ 42–43; *see also id.* at ¶ 33 ("Plaintiff was compensated . . . on a fee basis, in which he was paid a fee for performing a particular service.").)

In the parties' Joint Report of Rule 26(f) Meeting and Proposed Discovery Plan, Defendants reiterated their defense that Merakey "properly compensated Plaintiff (as well as other licensed behavioral specialist consultants and the other proposed classes alleged in the Complaint) on a fee-basis and that those employees each met the duties test required by regulation under the FLSA to be exempt from overtime."  (Doc. No. 14 at p. 2.)  Subsequently, on February 10, 2020, the Honorable Wendy Beetlestone issued a scheduling order, which directed the parties to conduct conditional certification discovery[5] and gave Mr. Kyem until June 1, 2020 to file his motion for conditional certification of the collective.  (Doc. No. 16.)  This matter was subsequently reassigned to the Honorable Karen Spencer Marston (Doc. No. 18), and the Court amended the scheduling order on two occasions, ultimately extending the deadline for Mr. Kyem to submit a conditional certification motion to August 31, 2020.  (Doc. Nos. 20 & 23.)  Additionally, the Court entered an order that the statute of limitations for all members of the putative collective class would be equitably tolled for thirty (30) days.  (Doc. No. 23.)

Mr. Kyem filed his motion for conditional certification on June 9, 2020.  (Doc. No. 24.)  He argues that conditional certification is merited because Merakey conceded in their answer and

_____

than being paid based on the amount of time it took to perform the service.  (*See* Doc. No. 10 at ¶ 33 ("By way of further answer, Plaintiff was compensated . . . on a fee basis, in which he was paid a fee for performing a particular service."); Doc. No. 28-1 at p. 20 ("[E]mployees may . . . work under a 'fee basis' and are paid an agreed upon sum for the service they provided, regardless of the amount of time that it took to provide that service.").)

[5] Judge Beetlestone limited the first phase of discovery to "time records, payroll records, and billing records, as well as any electronically stored information (including but not limited to social media posts) in which Plaintiff discussed his qualifications, methods of payment, hours worked, or conduct inconsistent with his job duties."  (Doc. No. 16 at ¶ 1.)

in subsequent discovery responses that Mr. Kyem and all of Merakey's BSCs, LBSCs, MTs, and TSSs were paid on a fee-for-service basis and were not paid overtime.  (Doc. No. 24-1 at p. 7.) Mr. Kyem asserts that, given these concessions, all of Merakey's BSCs, LBSCs, MTs, and TSSs have identical legal claims against Merakey:  namely, that they were misclassified as FLSA-exempt and not paid overtime as a result.  (*Id.* at pp. 10–12.)  In his motion, he proposes conditional certification of a collective consisting of:

> All persons presently or formerly employed by Defendants Merakey USA and/or Merakey Children's Service [sic] in the positions of Behavioral Specialist Consultant, Licensed Behavioral Specialist Consultant, Mobile Therapist, and/or Therapeutic Staff Support who were paid on a "fee-for-service" basis and who were paid for at least thirty-two (32) hours of work in two (2) or more workweeks during the past three (3) years.

(*Id.* at p. 1.)

On July 31, 2020, Merakey filed their response in opposition to Mr. Kyem's motion, reiterating the argument from their answer that Mr. Kyem and his colleagues were FLSA-exempt.  (Doc. No. 27 at p. 12.)  However, Merakey's response simultaneously moves away from their answer, where they state that BSCs, LBSCs, MTs, and TSSs "do not receive overtime compensation" (Doc. No. 10 at ¶ 48), by asserting instead that these employees, while not entitled to overtime, receive "piece rate adjustment payments that are the equivalent of overtime payments."[6]  (Doc. No. 27 at p. 12.)  Merakey claims that even if Merakey misclassified non-exempt employees as FLSA-exempt, there is no harm to these employees, because misclassification alone is not a basis for liability under the FLSA.  (*Id.*)  Moreover, Merakey argues that Mr. Kyem fails to provide evidence that he is similarly situated to the proposed

---

[6] "Piece rate adjustment" refers to an additional payment Merakey says they made on top of an employee's salary to compensate an employee if he or she worked more than 40 hours in a week.  (*See* Doc. No. 27 at p. 14; Doc. No. 28-1 at p. 19.)  Although Merakey now argues that the piece rate adjustments constitute overtime compensation, Merakey never references this fact in any discovery responses produced during the first phase of discovery.  (Hr'g Tr. at 12:19–13:2.)

5

collective members.  (*Id.* at pp. 16, 20.)

Mr. Kyem filed a reply brief on August 21, 2020.  (Doc. No. 28.)  In it, he argues that this case is not about misclassification alone; rather, it is about how as a result of the misclassification, the BSCs, LBSCs, MTs, and TSSs are not paid overtime, as required pursuant to the FLSA.  (*See id.* at pp. 6–7.)  Mr. Kyem also provides additional evidence, including a supplemental affidavit, which he claims supports his contention that he is similarly situated to the proposed collective members.  (*See generally* Doc. No. 28-1.)

Merakey then filed a sur-reply on August 28, 2020, and for the *first* time, abandoned their argument that Mr. Kyem and the other members of the proposed collective are FLSA-exempt.[7] (Doc. No. 29 at p. 4 & n.2.)  Instead, Merakey asserts in their sur-reply and during oral argument that Mr. Kyem and the collective members *were*, in fact, hourly employees entitled to overtime pay—which Merakey claims they pay these employees in the form of piece rate adjustments.

---

[7] Defendants claim that their review of "available records, as part of the normal discovery process, led to a need for additional investigation to determine if amendments to their pleading were needed."  (*Id.* at p. 4 & n.2.)  Defendants' additional investigation "was significantly delayed by the onset of the pandemic."  (*Id.*)  The Court understands that the pandemic has led to many challenges, but the Court finds this excuse troubling.  Merakey's original answer asserting the defense that Plaintiff was exempt under the FLSA was filed on January 16, 2020, approximately two months before any pandemic-forced lockdowns.  (Doc. No. 10.)  Then, on May 11 and 27, 2020, Merakey responded to Plaintiff's Conditional Certification-Related Interrogatories, continuing to argue that the exemption applied.  On July 31, 2020, Merakey stood by their argument in their opposition to the motion to certify the FLSA collective.  Allegedly, at some point between July 31, 2020 and August 28, 2020, when Merakey filed their sur-reply, "additional investigation" led Merakey to conclude they no longer wanted to argue that Plaintiff was exempt.  Despite this recantation of their defense, it does not appear that Merakey provided Plaintiff any supplemental discovery uncovered during the "additional investigation."  And unexplainably, it took another *seven months* for Merakey to file a motion to amend their answer.  (Doc. No. 32.)

Given that Federal Rule of Civil Procedure 11(b) requires attorneys to certify, following a reasonable inquiry, that the facts and factual denials in pleadings and other filings are supported by evidence that is or will be available, the Court finds it deeply disturbing that it took Merakey's counsel so long to determine that Mr. Kyem and his colleagues are not FLSA-exempt.  Here, the documents Merakey produced to Mr. Kyem *prior* to Mr. Kyem filing his motion for conditional certification appear to provide a sufficient basis for determining that the defense that Mr. Kyem and his colleagues are FLSA-exempt is unavailable.

(*Id.* at p. 2; Hr'g Tr. at 51:14–16.)  Given this revelation, Merakey argues that conditional certification is not merited, because the only remaining issue in the case is whether Mr. Kyem and his colleagues actually received the overtime pay they were entitled to—a highly individualized factual inquiry that, in Merakey's view, renders even preliminary certification of a collective inappropriate.  (Doc. No. 29 at pp. 5–6.)

The Court held oral argument on Mr. Kyem's motion on March 31, 2021.  The following day, Mr. Kyem filed a notice of opt-in consent from Jacqueline M. Johnson.[8]  (Doc. No. 34.)  On April 23, 2021, an affidavit from Ms. Johnson was filed in which she asserts that she worked as a BSC and an MT for Merakey, and that she was also not paid for non-billable work.  (Doc. No. 37.)  Ms. Johnson is, to date, the only other person to opt into the suit.

## II.

A plaintiff who alleges an FLSA violation is allowed to bring an action "on behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  In a collective action, members of the collective must affirmatively opt into the suit.  For this reason, courts in the Third Circuit approve FLSA collectives using a two-step process.  *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).  At the first stage—the stage this proceeding is currently at—courts consider whether the collective should be conditionally certified for the purpose of providing notice to potential collective members.  *Halle v. W. Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).  Conditional certification is not true certification—it is merely "an exercise of a district court's discretionary authority to oversee and facilitate the notice process."

---

[8] At oral argument, Mr. Kyem's counsel noted that even under ideal conditions, it is often difficult for FLSA plaintiffs to find other employees to join their suit, because employees fear that they will be retaliated against for having sued their employer.  (*See* Hr'g Tr. at 17:19–18:6.)  Here, Mr. Kyem's attorney noted that recruitment is particularly difficult where similarly situated employees travel to various off-site locations and are not all working in the same office—conditions that have only been exacerbated by the COVID-19 pandemic, which has driven work to take place remotely.  (*Id.* at 17:4–15.)

*Id.* At the second stage, known as "final certification," the Court considers whether to formally approve the matter as a collective action. *See Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017); *Halle*, 842 F.3d at 226.

The plaintiff bears the burden of showing that he is "similarly situated" to other members of the putative collective within the meaning of § 216(b). *Karlo*, 849 F.3d at 85. For the Court to grant conditional certification of the collective, Mr. Kyem must "make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him . . . and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 546 n.4). Courts consider several factors at the conditional certification stage, including "whether the plaintiffs (1) are employed in the same department, division, and location; (2) advance similar claims; (3) seek substantially the same form of relief; and/or (4) have similar salaries and circumstances of employment." *Weirbach v. Cellular Connection, LLC*, 478 F. Supp. 3d 544, 548 (E.D. Pa. 2020).

III.

Mr. Kyem only partially clears the bar for collective certification. As noted above, he seeks conditional certification of a class consisting of not only BSCs and LBSCs, but also MTs and TSSs, "who were paid on a 'fee-for-service' basis and who worked at least thirty-two (32) hours of work in two (2) or more workweeks during the past three (3) years." (Doc. No. 24 at p. 1.) As for both the BSCs and LBSCs who currently work or have worked for Merakey in the past three years, Mr. Kyem has provided a sufficient "factual nexus between the manner in which an employer's alleged policy affected a named plaintiff and the manner in which it affected other employees." *Mitchell v. Covance, Inc.*, 438 F. Supp. 3d 341, 346 (E.D. Pa. 2020).

8

**Formatted:** Don't keep with next

In order to meet his burden of making a modest factual showing that conditional certification is merited, Mr. Kyem must provide more than unsupported assertions or the allegations in his complaint. *DiFlavis v. Choice Hotels Int'l, Inc.*, Civil Action No. 18-3914, 2020 WL 610778, at *15 (E.D. Pa. Feb. 6, 2020). He must support his assertions with evidence "in the form of pleadings, affidavits, deposition testimony, or other supporting documents." *Id.* (quoting *Reed v. Empire Auto Parts, Inc.*, No. 13-5220, 2015 WL 761894, at *4 (E.D. Pa. Feb. 23, 2015)). Here, Mr. Kyem relies on Merakey's answer, affidavits, some pay records, responses to written discovery, and excerpts from a Merakey employment manual. (*See generally* Doc. No. 24-2; Doc. No. 28-1.)

Mr. Kyem is correct that Merakey's current operative answer supports the modest factual showing necessary for conditional certification. Merakey admits that they did not pay Mr. Kyem or the other members of the putative collective overtime. (*See, e.g.*, Doc. No. 10 at ¶¶ 42–43, 48, 52.) And Merakey reiterates these same admissions in their verified written responses to interrogatories, showing that Merakey believed Mr. Kyem was "FLSA-exempt" and not entitled to overtime compensation.[9] (Doc. No. 24-2 at p. 33 ("[T]hose employed in the roles of Licensed Behavioral Specialist Consultant or Behavioral Specialist Consultant . . . were paid on a fee-for-service basis."); *see also, e.g.*, *id.* at p. 4 (claiming that Mr. Kyem was FLSA-exempt in part because he "is compensated on a fee basis").) Only now, as Merakey attempts to defeat

---

[9] There is no indication that Merakey ever supplemented their responses to Mr. Kyem's interrogatories to reflect their new defense that Mr. Kyem and his colleagues are non-exempt under the FLSA and are paid overtime when they work more than 40 hours in a week. Under Federal Rule of Civil Procedure 26(e), Merakey has a duty to supplement its discovery responses. Fed. R. Civ. P. 26(e) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

conditional certification, does Merakey abandon this argument and claim Mr. Kyem cannot meet the lenient standard for conditional certification.[10]  Merakey's last minute change of tactics unfairly prejudices Mr. Kyem who appropriately relied on Merakey's admissions in filing his Motion to Proceed as a Collective.

Next, Mr. Kyem's and Ms. Johnson's affidavits demonstrate that they both are similarly situated with their BSC and LBSC colleagues.  (*See generally* Doc. No. 24-2 at pp. 9–12 (Kyem Affidavit); Doc. No. 28-1 at pp. 58–60 (Kyem Supplemental Affidavit); Doc. No. 37 (Johnson Affidavit).)  First, they aver that based on what Merakey told them, it was their understanding that they would only be paid for their billable hours and some time spent on training and supervision.  (Doc. No. 24-2 at p. 9, ¶ 5; Doc. No. 37 at ¶ 5.)[11]  Second, Mr. Kyem and Ms. Johnson submit that they were not compensated for other non-billable work, and that Merakey restricted the amount of time that they were allowed to claim for certain tasks—regardless of how long those tasks actually took.  (Doc. No. 24-2 at pp. 10–11, ¶¶ 13–19; Doc. No. 37 at ¶¶ 9–13, 16–19.)  Third, Mr. Kyem and Ms. Johnson claim that, based on their observations and discussions they know that their colleagues "generally perform the same amount of non-billable work without compensation."[12]  (Doc. No. 24-2 at p. 11, *see also* ¶ 21; Doc. No. 37 at ¶ 15.)

---

[10] At oral argument, Merakey's counsel attempted to explain his initial reasoning, stating that while preparing Merakey's answer, he "thought there was an argument and a defense that" Mr. Kyem and his colleagues were FLSA-exempt "based on the facts and the fee-for-service system that [Merakey] had in place."  (Hr'g Tr. at 37:22–38:2.)  Later, after reviewing further evidence, counsel concluded that such a defense was unavailable.  (*Id.* at 38:3–20.)  This explanation fails to explain why it took Merakey so long to discover that their employees were not FLSA-exempt, or why, having made that discovery at the eleventh hour, it took Merakey an additional seven months to file their proposed amended answer.

[11] It does not appear that Merakey provided any discovery as to who was responsible for training Mr. Kyem, and Mr. Kyem does not identify specifically who at Merakey told him these things.  (*See id.*)

[12] The Court notes that "the Third Circuit has not directly addressed the admissibility of hearsay evidence in connection with conditional certification."  *Jordan v. Meridian Bank*, Civil Action No. 17-5251, 2019 WL 1255067, at *8 (E.D. Pa. Mar. 19, 2019).  However, courts in the Third Circuit and in this District have often considered such evidence in deciding motions for conditional certification.  *See, e.g.*, *id.* (collecting cases); *Alvarez v. BI Inc.*, Civil Action No. 16-2705, 2018 WL 2288286, at *7 n.5 (E.D. Pa.

Moreover, the Court finds that Mr. Kyem's timesheets lend credence to the allegations that Merakey refused to pay overtime when billable and non-billable hours exceeded forty hours a week.  Mr. Kyem's timesheets show that while he documented the number of billable hours he spent on direct services to clients, he did not specifically document the hours he spent on non-billable tasks such as travel, supervision, or wait time.  (*See* Doc. No. 24-2 at pp. 21, 23.) Rather, Mr. Kyem merely checked the boxes for those tasks, indicating that he spent time on them, but not detailing the amount of time spent.  (*See id.*)  Although Merakey insists that they pay employees for all documented non-billable time and that they have policies in place to ensure that employees are properly documenting their time (*see* Doc. No. 27-2 at ¶¶ 24–25), the Court finds that Mr. Kyem's timesheets support the assertion that Merakey has a policy or practice of not compensating BSCs and LBSCs for their non-billable hours.  This conclusion is supported by the fact that Mr. Kyem has apparently been filling out his timesheets in this same manner since he was hired in 2013.  (*See* Doc. No. 28-1 at p. 59, ¶¶ 8–11.)  During that time, no Merakey supervisor has ever questioned Mr. Kyem's failure to specify the time he spends on non-billable work.  *(Id.* at p. 59, ¶ 7.)

In addition to their disavowal of their answer (and implicit disavowal of their discovery responses), Merakey attempts to rebut Mr. Kyem's asserted facts in an effort to undermine his modest factual showing in other ways.  (*See generally* Doc. No. 27-2.)  These attempts are unavailing.  At the conditional certification stage, the Court does not weigh evidence, make

_____

May 17, 2018) ("I agree with Plaintiffs that evidence need not be admissible at trial to be considered at the conditional certification stage, where the evidentiary burden is slight, and where a court does not assess the merits but simply determines whether there is modest evidence of a common policy or practice").  *But see, e.g.*, *Mitchell*, 438 F. Supp. 3d at 346–47 & n.5 (collecting cases).  The Court finds the reasoning of *Jordan*, *Alvarez*, and similar cases persuasive, and will consider hearsay statements for the purposes of evaluating Mr. Kyem's motion for conditional certification.

credibility determinations, or draw conclusions of fact. *See Weirbach*, 478 F. Supp. 3d at 549. To the extent the parties have a factual dispute, it is best resolved at the final certification stage. *See id.* ("At the conditional certification phase, the Court need only determine whether there is a modest evidentiary showing of similarity. If there is, then the Court will certify the collective. [Defendant] will have its chance to rebut the claims. But that time is not now."). Nonetheless, because Merakey relies on factual disputes to argue that Mr. Kyem fails to make a modest factual showing that he is similarly situated with his colleagues, the Court will briefly address those disputes here.

First, Merakey says that Mr. Kyem lacks firsthand knowledge of the MT and TSS roles. (Doc. No. 27 at pp. 17–18.) For this reason, Merakey asserts that Mr. Kyem makes factual errors in his allegations about those roles, and is unable to do more than speculate about how people holding those roles operate or are compensated. (*See id.*; Doc. No. 27-2 at ¶¶ 40–41.) As discussed more fully below, the Court concludes that, even if Mr. Kyem's disputed statements are true, he fails to establish that he is similarly situated with the MTs and TSSs. Accordingly, the Court need not decide whether Mr. Kyem's apparent factual errors with respect to the duties and compensation of MTs and TSSs weigh against conditional certification.[13]

Second, Merakey argues that BSCs and LBSCs, such as Mr. Kyem and Ms. Johnson, were trained to report all of the hours they worked, whether billable or not. (Hr'g Tr. at 34:7–17.) Merakey states that there is a training module that instructs new employees to document their non-billable time so that they can be paid for those hours. (*Id.* at 34:15–35:6.) Merakey

---

[13] Similarly, Ms. Johnson's affidavit—which was filed nearly eight months after briefing regarding Mr. Kyem's motion for conditional certification closed, and which Merakey therefore did not have an opportunity to respond to—fails to assert facts that, even taken as true, would warrant inclusion of MTs or TSSs in the conditionally certified collective. Therefore, the Court need not consider whether Ms. Johnson's factual assertions regarding the duties and compensation of MTs and TSSs are accurate.

never produced this module during the conditional certification discovery.  At oral argument,

Merakey claimed that they had not had an opportunity to produce the module because Mr. Kyem

filed his motion for conditional certification prior to the deadline for discovery.  (*Id.* at 34:23–

35:4.)  This fact is of no moment.  Merakey certainly could have produced the module after Mr.

Kyem filed his motion, or used it as an exhibit to their opposition brief.[14]  And, even if Merakey

had produced the module, this alone would be insufficient to defeat Mr. Kyem's motion.

Merakey proffers no evidence to show that Mr. Kyem or any BSC or LBSC, actually viewed this

alleged training module.[15]

        In addition to these factual disputes, Merakey also raises two legal arguments.  First, they

argue that, even to the extent Mr. Kyem and his colleagues were subjected to a common

unlawful policy or procedure, they are not similarly situated because proving their damages

would require examining their individual timesheets and pay records.  (*See, e.g.*, Doc. No. 27 at

pp. 5, 14; Hr'g Tr. at 39:4–19.)  This argument is unconvincing.  To begin with, collective

actions will almost always require some measure of individualized proof when it comes to

damages.  The relevant inquiry is not whether Mr. Kyem and the putative class members were

identically damaged, but whether they were damaged in the same way by the same policy.  *See*

*Halle*, 842 F.3d at 224.  Judges in this District have routinely "granted conditional certification in

cases where plaintiffs alleged that they were not paid for off-the-clock work."  *Weirbach*, 478 F.

Supp. 3d at 549 (collecting cases).  The Court sees no reason to deviate from that practice in this

---

[14] Merakey noted in their responses to written discovery requests that their investigation into Mr. Kyem's training was "still ongoing"—implying that they would supplement their responses as more information became available.  (Doc. No. 24-2 at p. 34.)  Indeed, as noted above, *supra* n.8, Merakey had a *duty* under Rule 26(e) to supplement their discovery responses when they became aware that they were incomplete or incorrect.

[15] Nor did Merakey state in their papers or at oral argument that such evidence existed.

case.

Second, at oral argument Merakey argued that Mr. Kyem's failure to identify any other Merakey employees who wished to join his case demonstrates that Merakey did not have a common unlawful policy or practice of failing to pay overtime.  (*See* Doc. No. 29 at p. 7.)  Since the hearing there has been one notice of opt-in consent in this matter.  Some judges have found that the failure to identify other potential members of the putative collective is evidence that a defendant does not have a common unlawful practice or policy.  *See Wright v. Lehigh Valley Hosp.*, Civil Action No. 10-431, 2010 WL 3363992, at *4 (E.D. Pa. Aug. 24, 2010) ("It is telling that despite having had ample time to recruit other registered nurses to support her claim, Wright remains unable to name a second person subjected to Defendants' FLSA violations.").  However, others have found that the lack of opt-in consent notices does not automatically defeat an FLSA conditional certification.  *See Lucke v. PPG Indus., Inc.*, No. 13cv0966, 2013 WL 6577772, at *3–4 (W.D. Pa. Dec. 16, 2013) (certifying a collective action brought by a single named plaintiff); *Goldstein v. Children's Hosp. of Phila.*, Civil Action No. 10-1190, 2013 WL 664174, at *5 (E.D. Pa. Feb. 25, 2013) (same); *see also Waltz v. Aveda Transp. & Energy Servs. Inc.*, Case No. 4:16-CV-00469, 2016 WL 7440267, at *4 (M.D. Pa. Dec. 27, 2016) (finding that plaintiffs were not required to show affirmative interest from other potential members of the collective in joining the lawsuit at the conditional certification stage).  We find this reasoning persuasive, especially given the challenges posed by the COVID-19 pandemic, which has forced many to work remotely from home.  We do not find the fact there is only one additional opt-in consent at this time determinative of whether Mr. Kyem has met the modest factual showing required.[16]

---

[16] Mr. Kyem's job involves working with students at Philadelphia area schools.  The Court notes that many of these schools have been virtual since the pandemic started in March 2020, and only recently have

An analysis of the factors articulated in *Weirbach* also supports the finding that conditional certification is merited in this case.  *See Weirbach*, 478 F. Supp. 3d at 548.  First, all members of the putative collective appear to be employed by Merakey Children's Services in the Philadelphia area.  (*See* Doc. No. 1 at ¶¶ 10, 14; Doc. No. 27-2 at ¶ 3.)  Second, they all advance similar claims—that they were denied overtime compensation owed to them under the FLSA. (*See* Doc. No. 1 at ¶¶ 68–70; Doc. No. 24-2 at p. 11, ¶¶ 20–21.)  Third, they all seek relief in the form of unpaid overtime, interest, liquidated damages, attorneys' fees and costs, and declaratory judgment.  (Doc. No. 1 at pp. 15–17.)  Fourth, they all have similar salaries and circumstances of employment:  Mr. Kyem attests that when he was promoted from BSC to LBSC, his salary increased, but he continued to be paid an hourly rate and his duties did not substantially change. (Doc. No. 24-2 at p. 12, ¶ 23.)  Therefore, all four of the factors identified in *Weirbach* weigh in favor of conditional certification.

In sum, Mr. Kyem has made a modest factual showing that he is similarly situated to Merakey's BSCs and LBSCs who are paid on an hourly basis.[17]

***

However, Mr. Kyem seeks more than just a preliminary certification of a collective of BSCs and LBSCs (positions he held) who worked for Merakey Children's Services (the company he works for).  He also seeks preliminary certification of a collective including "all BSCs, LBSCs, MTs, and TSSs employed by Merakey USA and its affiliates."  (Doc. No. 24-1 at

---

returned to some limited "in person" instruction.

[17] The Court emphasizes that at this stage of the litigation, only conditional certification is at issue.  At the conclusion of discovery, Merakey may file a motion to decertify the collective.  *See Halle*, 842 F.3d at 226.  At the second stage, determining whether final certification is appropriate, the Court will closely scrutinize whether the record evidence demonstrates that members of the collective are truly similarly situated.

p. 22; *see also* Hr'g Tr. at 5:8–12, 23:3–24:11.)  As noted above, Mr. Kyem argues that
Merakey's concession in their original answer and subsequent discovery responses that they pay
MTs and TSSs on a fee for service basis and does not pay them overtime demonstrates that he is
similarly situated to these employees.  (*See* Doc. No. 28 at pp. 10–14.)  The Court does not find
these admissions are sufficient to establish that BSCs and LBSCs are similarly situated to the
MTs and TSSs.  And even taking into consideration the additional opt in, Ms. Johnson, who
worked both as a BSC and a MT, the Court finds that Mr. Kyem fails to meet his burden.  Mr.
Kyem has not shown that preliminary certification is warranted with respect to MTs or TSSs, or
with respect to employees of corporate entities other than Merakey Children's Services and
Merakey USA.

    First, Mr. Kyem has never been employed as an MT or a TSS.  It is true that Mr. Kyem
worked some hours as an MT.  (*See* Doc. No. 24-1 at p. 19; Doc. No. 24-2 at p. 25.)  However,
Mr. Kyem never explains how working some hours as an MT—and earning the lower hourly rate
MTs were paid—similarly situates him to Merakey's MTs with respect to his understanding of
how they fill out their timesheets.  For example, he does not aver that he went through MT
training, that any MT training he participated in included instruction on how to fill out an MT's
timesheets, or that MTs receive the same training on how to fill out their timesheets as BSCs and
LBSCs.

    Ms. Johnson's affidavit is similarly deficient.  Although she asserts that she worked for
Merakey as both a BSC and an MT throughout the course of her employment and was
compensated only for her billable work (Doc. No. 37 at ¶¶ 3–5), she never describes being
trained as an MT, whether any MT training included instruction on how to fill out her timesheets,
or whether MTs receive the same training as BSCs regarding how to fill out their timesheets.

16

Absent a showing of this or similar evidence, Mr. Kyem fails to satisfy the modest factual

showing that BSCs and LBSCs are similarly situated to Merakey's MTs.  *See Diabate v. MV*

*Transp., Inc.*, Civil Action No. 14-857, 2015 WL 4496616, at *7 (E.D. Pa. July 20, 2015)

(denying conditional certification where the plaintiff had not sufficiently demonstrated that she

shared the same duties as workers with a different job title); *Goldstein*, 2013 WL 664174, at *6

(same); *cf. Pereia v. Foot Locker, Inc.*, 261 F.R.D. 60, 65–66 (E.D. Pa. 2009) (rejecting an

argument against preliminary certification of a collective including employees with a variety of

job titles where plaintiff had alleged a common policy impacting all members of the collective).

  The portion of Mr. Kyem's motion seeking to include TSSs in the putative collective is

similarly defective.  Mr. Kyem asserts that he is "familiar with [the] job duties and billing

practices" of TSSs because he has trained "several of them" and that he knows that TSSs "are

not required to report the time they spend writing progress notes or traveling during the

workday."  (Doc. No. 28-1 at p. 60, ¶ 15.)  However, Mr. Kyem never provides any specific facts

showing that the policies Merakey allegedly applies to BSCs and LBSCs also apply to TSSs,

and, as a result, Mr. Kyem fails to establish that he is similarly situated to the TSSs for the

purposes of this case.  *See Shala v. Dimora Ristorante, Inc.*, Civ. No. 2:16-03064 (WJM), 2016

WL 7386954, at *3 (D.N.J. Dec. 21, 2016) (denying conditional certification where a plaintiff

could not offer more than his own word that other employees were similarly situated to himself);

*Wright*, 2010 WL 3363992, at *4 ("[Plaintiff] must come forth with admissible evidence to

satisfy her burden that putative class members are similarly situated. . . . [H]er unsupported

assertion that other registered nurses must have been subjected to these same conditions is

insufficient to sustain her minimal burden."); *see also Jordan*, 2019 WL 1255067, at *3

(observing that something beyond mere speculation is required to support a motion for

conditional certification).

Second, there is no basis for including employees of Merakey USA's affiliates—other than Merakey Children's Services, for whom Mr. Kyem and Ms. Johnson worked—in the collective.  Simply put, Mr. Kyem has provided no evidence regarding these affiliates.  Mr. Kyem argues that Merakey USA and Merakey Children's Services "are a joint, single, and/or integrated employer with respect to him and [the] Putative Class Members."  (Doc. No. 24-1 at p. 22; *see also* Doc. No. 1 at ¶ 13.)  Even accepting that assertion as true (the Court need not and does not resolve this disputed issue in this Memorandum), it does not necessarily follow that Merakey USA jointly employs the workers at its other affiliates.  Without evidence showing that the alleged FLSA violations applicable to Merakey USA's and Merakey Children's Services's clinical behavioral staff also apply to Merakey USA's other affiliates, the Court has no basis for finding that employees of those affiliates are similarly situated to Mr. Kyem.

## IV.

In addition to moving for conditional certification of the collective, Mr. Kyem moves for approval of his proposed notice to the putative collective.  (*See* Doc. No. 24-1 at pp. 26–27; *see also* Doc. No. 24-2 at pp. 95–98.)  However, in light of this Memorandum and Merakey's pending motion to amend its answer, the proposed notice must be revised.  Accordingly, the notice, as proposed, will not be approved.  Instead, the parties shall meet and confer regarding an amended notice, which they shall jointly propose to the Court.

## V.

Last, Mr. Kyem seeks to have the Court's prior order equitably tolling the statute of limitations for all members of the putative collective by thirty days (Doc. No. 23) applied to the calculation of the lookback period for conditional certification.  (*See* Doc. No. 24-1 at p. 27.)

18

Merakey opposes this request, arguing that equitable tolling is inappropriate because it is not supported by the extraordinary circumstances generally necessary to justify such a remedy. (Doc. No. 27 at pp. 28–29 (citing *D.J.S.-W. ex rel Stewart v. United States*, 962 F.3d 745, 752 (3d Cir. 2020).)

The Court's order equitably tolling the statute of limitations does not, on its face, require renewal. (*See* Doc. No. 23.)  While the Court recognizes that the equitable tolling was premised on an extension of discovery and motions deadlines in this case, nothing in the order prohibited Mr. Kyem from filing his motion for conditional certification early, as he chose to do.  Nothing about that early filing date mooted or otherwise affected the tolling order.  To the extent Merakey felt that the tolling order was issued in error or needed to be corrected, the proper procedural mechanism for addressing these issues would have been to file a motion for clarification or reconsideration.  They did not file such a motion.

Merakey failed to follow the proper procedures for challenging the Court's tolling order, so the Court will not now consider the merits of their challenge.  Accordingly, the Court's order equitably tolling the statute of limitations stands.

## VI.

For these reasons, Mr. Kyem's motion seeking preliminary certification of the collective shall be granted in part and the Court will preliminarily certify a collective consisting of all persons presently or formerly employed by Merakey USA or Merakey Children's Services in the positions of Behavioral Specialist Consultant or Licensed Behavioral Specialist Consultant who were paid on an hourly basis[18] and who were paid for at least thirty-two hours of work in two or

---

[18] The Court conditionally certifies a class of Merakey BSCs and LBSCs paid on an hourly basis based on Mr. Kyem's assertion, and Merakey's concession at oral argument, that Merakey's BSCs and LBSCs are paid on an hourly basis.  (*See* Doc. No. 28 at pp. 6–7; Hr'g Tr. at 51:14–16.)

more workweeks during the last three years.  Mr. Kyem's motion seeking approval of the notice

to the collective shall be denied.  The parties shall meet and confer to produce a mutually

agreeable notice.

An appropriate order follows.

20