**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANCIS KYEM,** *individually and on behalf of all others similarly situated*, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 2:19-cv-05577-KSM** |
| **MERAKEY USA, et al.**, | |
| Defendants. | |

## <u>MEMORANDUM</u>

**MARSTON, J.**                                                    **February 11, 2022**

Plaintiff Francis Kyem is employed as a Behavioral Specialist Consultant with Defendant Merakey Children's Services (a subsidiary of Defendant Merakey USA).  (Doc. No. 1.)  Plaintiff alleges that he was an hourly employee and Defendants failed to appropriately compensate him for all the hours that he worked; specifically, he alleges that time spent on certain "non-billable" work went uncompensated.  He brings this lawsuit, individually and on behalf of others similarly situated, alleging that Defendants' policy or practice of not paying employees for non-billable work violated the Fair Labor Standards Act ("FLSA") and Pennsylvania wage and hour laws. The Court preliminarily certified this matter as a collective action on April 30, 2021.  (Doc. No. 40.)  Presently before the Court are Plaintiffs' Unopposed Motion for an Order Approving the Settlement Agreement and Granting a Service Award (Doc. No. 50) and Plaintiffs' Unopposed Motion for an Order Awarding Attorneys' Fees and Reimbursement of Expenses (Doc. No. 51). For the reasons below, Plaintiffs' motions are granted.

I.      **BACKGROUND**

      *A.      Factual Background*

Because we write primarily for the parties, we provide only limited background.  A fuller recitation of the relevant facts is available in the Court's Memorandum regarding preliminary certification of this matter as a collective action, which is available at *Kyem v. Merakey USA*, CIVIL ACTION NO. 19-5577-KSM, 2021 WL 1732501 (E.D. Pa. Apr. 30, 2021).

      Since 2012, Plaintiff has worked for Defendants as a Behavioral Specialist Consultant ("BSC") and, more recently, as a Licensed Behavioral Specialist Consultant ("LBSC").  (Doc. No. 1 ¶¶ 10–11, 32.)  For the duration of his employment, Plaintiff has been compensated on an hourly basis.  (*Id.* ¶ 33.)  Plaintiff rarely spent time at Defendants' offices; instead, he worked in the field.  (*Id.* ¶ 44.)  His duties included meeting with clients and their family members; meeting with school personnel; communicating with clients, their families, and school personnel via telephone or email; preparing or revising behavior modification plans; and creating progress notes.  (*Id.* ¶¶ 35, 39.)  Defendants billed only some of these activities to their clients, and it was Plaintiff's understanding that he would be compensated only for time spent on billable activities.  (*Id.* ¶ 42; *see also* Doc. No. 24-2 at 9–12.)

      Based on this understanding, Plaintiff submitted timesheets documenting only what he considered to be billable hours, and he was not compensated for the hours he spent on non-billable work.  (Doc. No. 1 ¶¶ 46–48.)  Plaintiff alleges that he regularly spends between ten and fifteen hours per week on non-billable work and that he works a total of 45 to 55 hours per week (accounting for both billable and non-billable work) (*id.* ¶¶ 46–47) but was not compensated or paid overtime for his non-billable hours (*id.* at ¶ 48).

### B.      Procedural History

Plaintiff filed this action on November 26, 2019, alleging that Defendants had violated his and others' rights under the FLSA and state wage and hour laws by refusing to compensate them for overtime when the combination of their billable and non-billable work exceeded 40 hours a week.  (*Id.*)  Plaintiff moved to conditionally certify the collective on June 9, 2020 (Doc. No. 34), and the parties engaged in limited discovery related to certification (Doc. No. 16).  On April 30, 2021, the Court conditionally certified the collective with respect to all BSCs and LBSCs employed by Defendants.  (Doc. No. 40.)

On May 5, 2021, the Court approved the proposed Collective Action Notice (the "Notice") (Doc. No. 44), and Plaintiffs' counsel mailed the Notice to the 19 individuals Defendants identified as being qualified for the collective (Doc. No. 50-1 at 4–5).  In addition to Plaintiff, three other employees timely opted in to the action:  Jacqueline Johnson, Cherrie Sage, and Sharon Palmer (together, with Mr. Kyem, the "Plaintiffs").  (*Id.* at 5.)

### C.      The Proposed Settlement

At the close of the opt-in period, the parties began engaging in "extensive, arms-length negotiations."  (*Id.* at 5–6.)  Defendants dispute their liability but have agreed to settle the claims in order "[t]o avoid the uncertainty and cost of further litigation of this matter."  (*Id.* at 6.)  Subject to the Court's approval, Defendants have agreed to pay $117,500.00 to settle Plaintiffs' claims (the "Proposed Settlement").[1]  (*Id.*)  The funds will be allocated as follows:

- $72,628.37 to Plaintiffs as set forth in the chart below.

---

[1] The Proposed Settlement was memorialized in a settlement agreement (the "Settlement Agreement").  (Doc. No. 50-2.)

| Plaintiff | Settlement Payment |
|---|---|
| Francie Kyem | $14,106.10 |
| Jacqueline Johnson | $9,087.82 |
| Sharon Palmer | $48,876.63 |
| Cherrie Sage | $557.82 |

- $41,871.63 to Plaintiffs' counsel in attorneys' fees and costs.

- $3,000.00 to Mr. Kyem as an award for his service as class representative.

(*Id.* at 6–7.)

Under the Proposed Settlement, each of the Plaintiffs would receive approximately 84% of the total maximum recovery they could possibly receive if they were successful at litigation. (*Id.* at 15.)

## II.     THE SETTLEMENT

### A.     *Legal Standard*

Courts considering whether to approve settlement of an FLSA action follow a three-step process. *See DiFlavis v. Choice Hotels Int'l, Inc.*, Civil Action No. 18-3914, 2020 WL 6728806, at *2 (E.D. Pa. Nov. 16, 2020).  First, the court considers whether "the settlement concerns a 'bona fide dispute.'"  *Id.* (quoting *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)).  If it does, the court then considers whether the settlement is "fair and reasonable for the employees."  *Id.*  And finally, the court considers whether the settlement "furthers the FLSA's implementation in the workplace."  *Id.*

In determining whether there is a "bona fide dispute" between the employees and the employer, courts consider whether the dispute involves legal or factual issues, "such as FLSA coverage or computation of back wages."  *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Bettger v. Crossmark, Inc.*, Civil Action No. 1:13-CV-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) ("An agreement resolves a bona fide

4

dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial.").  A bona fide dispute exists when "the dispute . . . fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented."  *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016).

In determining whether a settlement is fair and reasonable, courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson* to evaluate whether a class action settlement is fair and reasonable.  *See DiFlavis*, 2020 WL 6728806, at *3; *In re Chickie's & Pete's Wage & Hour Litig.*, Civil Action No. 12-6820, 2014 WL 911718, at *2–3 (E.D. Pa. Mar. 7, 2014).  *But see Kraus*, 155 F. Supp. 3d at 523 n.3 (observing that some of the *Girsh* factors do not apply in the context of FLSA settlements and that "though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable.").

And finally, in determining whether the settlement advances the purposes of the FLSA, courts consider factors such as whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's "informational objective."  *In re Chickie's & Pete's*, 2014 WL 911718, at *3; *DiFlavio*, 2020 WL 6728806, at *7–8.

**B.  Analysis**

The Court considers whether the Proposed Settlement satisfies each of the three requirements for approval in turn below.

**1.  A Bona Fide Dispute Exists**

The Proposed Settlement resolves bona fide factual and legal disputes between the parties.  There is a factual dispute as to how much time Plaintiffs spent on non-billable work for

5

every 60 minutes of billable work.  (Feb. 2, 2022 Hr'g Tr. at 3.)    There is another factual

dispute as to whether Plaintiffs were paid on an hourly basis (as they contend) or on a piece rate

basis (as Defendants contend).  (*Id.* at 3.)  If Plaintiffs were paid on a piece rate basis, that

"would result in a threefold reduction in the amount of potential overtime recovery."  (*Id.*)  And

there is a legal dispute regarding the applicable statute of limitations.  (*Id.*)  Plaintiffs contend

that a three-year statute of limitations applies, but Defendants argue that the FLSA's standard

two-year statute of limitations applies.  (*Id.*)  Finally, the parties dispute whether liquidated

damages are available under the FLSA.  (*Id.*)

Given these areas of disagreement, the Court finds that the Proposed Settlement resolves

bona fide disputes between the parties.  *See Morales v. Unique Beginning Caterers Ltd. Liab.*

*Co.*, No. 1:20-cv-10026, 2021 WL 5864061, at *2 (D.N.J. Dec. 10, 2021) (determining that a

proposed settlement resolved a bona fide dispute where the plaintiff contended that he was paid

on an hourly basis but the defendant contended that he was paid a fixed weekly rate); *Sawyer v.*

*Health Care Sols. at Home, Inc.,* No. 5:16-cv-5674, 2019 WL 1558668, at *3 (E.D. Pa. Apr. 10,

2019) (concluding that a proposed settlement resolved a bona fide dispute where, among other

points, the parties disagreed as to the applicable statute of limitations).

### 2.    The Proposed Settlement Is Fair and Reasonable

The Court finds that the Proposed Settlement is fair and reasonable.  In *Girsh v. Jepson*,

the Third Circuit set forth nine factors that courts should consider in determining whether a

settlement is fair and reasonable.  521 F.2d at 157.  The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks of
> establishing liability; (5) the risk of establishing damages; (6) the
> risk of maintaining the class action through the trial; (7) the ability
> of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible

recovery; and (9) the range of reasonableness of the settlement fund
to a possible recovery in light of all the attendant risks of litigation.

*Id.* (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (cleaned up).

An analysis of these factors supports a finding that the Proposed Settlement is fair and

reasonable.

     *Complexity, Expense, and Likely Duration of Litigation.*  This factor weighs in favor of

granting approval.  Although the parties have already engaged in substantial discovery, they

would have to undertake even more discovery were this case to continue forward.  (Doc. No. 50-

1 at 9.)  For instance, the parties would have to depose various of Defendants' employees and

each of the Plaintiffs.  (*Id.*)  Further, the parties would also likely have to engage in "significant"

motions practice, including Plaintiffs moving to certify this case as a class action under

Pennsylvania state laws and moving to expand the collective to include additional job

classifications and Defendants objecting to the certification of a class action and moving to

decertify the collective.  (*Id.*)  Finally, trial would be time- and resource-intensive and would

delay any eventual recovery for Plaintiffs.  (*Id.* at 9–10.)  Accordingly, this factor weighs in

favor of approving the Proposed Settlement.  *See Wood v. Saroj & Manju Invs. Phila. LLC*,

CIVIL ACTION NO. 19-2820-KSM, 2021 WL 1945809, at *7 (E.D. Pa. May 14, 2021)

(determining that the first factor weighed in favor of approval where the parties would have to

conduct additional discovery and were likely to engage in extensive motions practice).

     *Reaction of Plaintiffs.*  This factor also weighs in favor of approval.  Plaintiffs' counsel

updated Plaintiffs as the settlement negotiations progressed and provided a detailed explanation

of the terms when the parties reached the Proposed Settlement.  (*Id.* at 10.)  Plaintiffs are "all . . .

in agreement," and no one has objected to the Proposed Settlement.  (Feb. 2, 2022 Hr'g Tr. at 7.)

This weighs strongly in favor of approving the Proposed Settlement.  *Cf. In re SmithKline*

*Beckman Corp. v. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("Both the utter absence of objections and the nominal number of shareholders who have exercised their right to opt out of this litigation militate strongly in favor of approval of the settlement.").

*Stage of Proceedings.*  Although the case is still in relatively early stages, the parties have exchanged significant discovery and engaged in motions practice in connection with the preliminary certification.  (*Id.* at 11.)  Plaintiffs' counsel also "undertook extensive research and preparation for this case, including participation in multiple discussions with Plaintiffs concerning the terms and conditions of their employment, collection and detailed investigation of payroll and time records, and review of the relevant statutes and case law."  (*Id.* at 12.)  Given this extensive preparation, Plaintiffs' counsel clearly "had an adequate appreciation of the merits of the case before negotiating" the Proposed Settlement, and this factor weighs in favor of approval.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

*Risks of Continued Litigation.*  As discussed above, *see supra* Section II.B.1, there are at least four bona fide legal and factual disputes between the parties:  the ratio of billable to non-billable work, whether Plaintiffs were paid hourly or piece rate, the applicable statute of limitations, and the availability of liquidated damages.  If any one of these disputes were resolved in Defendants' favor, Plaintiffs' maximum potential recovery would be significantly undercut.  (Doc. No. 50-1 at 13.)  There is also a risk that Plaintiffs' maximum potential recovery would be even further undercut if Defendants succeeded on their argument that they are "not responsible for the payment of overtime compensation for hours worked but not reported . . . due to [Plaintiffs'] alleged failure to follow Defendants' policies and trainings with respect to tracking and reporting all hours worked."  (*Id.*)  Further, there is a risk that the collective might be decertified "because of the number and variety of individual questions as to the amount of

8

time [Plaintiffs] spent performing the allegedly uncompensated activities." (*Id.* at 14.)  Given these risks, this factor militates in favor of approval.

      *Ability of Defendants to Withstand a Greater Judgment.*  This factor is neutral. Defendants are non-profit entities that have struggled financially in light of the COVID-19 pandemic and associated school closure orders, but it is possible that they could withstand a greater judgment without being forced into bankruptcy.  (*Id.*)  Regardless, this factor does not carry much weight in determining whether to approve an otherwise fair and reasonable settlement.  *See Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 3d 290, 318 (W.D. Pa. 1997) ("The Court presumes that Defendants have the financial resources to pay a larger judgment. However, in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial, the Court accords this factor little weight in deciding whether to approve the proposed Settlement.").  Taking these considerations together, this factor weighs neither in favor of nor against approving the settlement.

      *Range of Reasonableness.*  This factor weighs in favor of approval.  Under the Proposed Settlement, each Plaintiff will receive approximately 84% of the maximum amount they could possibly hope to receive at trial assuming every legal and factual dispute was resolved in their favor.  (Doc. No. 50-1 at 15.)  *See Wood*, 2021 WL 1945809, at *16 (concluding that a proposed settlement which provided 76% of the plaintiff's maximum potential recovery was reasonable).

      In sum, eight of the nine *Girsh* factors weigh in favor of approval, and none of the factors weigh against approval, so the Court finds that the Proposed Settlement is fair and reasonable.

### 3.      The Settlement Advances the Purposes of the FLSA

      The Court must consider whether the Proposed Settlement furthers the purposes of the FLSA.  The Settlement Agreement requires the members of the collective to waive only their FLSA and state law wage and hour-related claims against Defendants during the class period.

(*See* Doc. No. 50-2 at 12–13.)  Accordingly, the release is appropriately and narrowly tailored. *See DiFlavis*, 2020 WL 6728806, at *6 (collecting cases).

Further, the Settlement Agreement does not contain a confidentiality clause.[2]  (*See generally* Doc. No. 50-2.)  Here, the Proposed Settlement includes a provision preventing Mr. Kyem and his counsel from "mak[ing] any public statements whatsoever, or issu[ing] press release(s) to the media or press, addressing the settlement."  (Doc. No. 50-2 at 13.)  This provision (which is more aptly described as a "non-publicity provision" than as a "confidentiality provision") does not run afoul of the FLSA.  The Proposed Settlement, like all of the filings in this matter, is publicly available on the Court's docket (*see* Doc. No. 50-2), and this provision only applies to Mr. Kyem and Plaintiffs' counsel—it does not restrict the ability of any of the other Plaintiffs to discuss the facts of the case or the terms of the settlement.  (*See* Feb. 2, 2022 Hr'g Tr. at 13–14 (counsel agreeing that the non-publicity provision applies only to the named plaintiff and his counsel).)

With so much information about this case already publicly available, this provision does not upset the purposes of the FLSA.  *In re Chickie's & Pete's*, 2014 WL 911718, at *3 ("The Proposed Agreement's confidentiality provision does not seek to seal the record or prohibit Plaintiffs from discussing this matter with anyone, but only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media.  Such a prohibition does not 'thwart the informational objective of the [FLSA's] notice requirement by silencing the employee who has vindicated a disputed FLSA right.'").

\*       \*       \*

---

[2] Courts must more closely scrutinize confidentiality clauses because "confidentiality clauses in FLSA settlement agreements frustrate the purpose of the Act by restricting information."  *Id.*; *see also In re Chickie's & Pete's*, 2014 WL 911718, at *3 (collecting cases).

Because the Proposed Settlement satisfies all three requirements, it will be approved.

## III.   SERVICE AWARD

We will also approve the $3000 service award.  Service payments are a common feature of collective action settlements.  *See Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011).  These payments serve "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of [the] litigation and to reward the public service of contributing to the enforcement of mandatory laws."  *Id.* (cleaned up).  "There is substantial precedent from [the Third] Circuit supporting approval of incentive payments."  *See Somogyi v. Freedom Mortg. Corp.*, Civil No. 17-6546, (RMB/JS), 2020 WL 6146875, at *9 (D.N.J. Oct. 20, 2020) (collecting cases).

Here, the proposed service award is reasonable.  Mr. Kyem has been "actively involved in this litigation since before it was commenced."  (Doc. No. 50-1 at 17–18.)  He provided documents to Plaintiffs' counsel, met with Plaintiffs' counsel on multiple occasions to explain Defendants' billing practices, assisted with the motion for conditional certification, provided two declarations, and helped Plaintiff's counsel respond to interrogatories.  (*Id.*; *see also* Feb. 2, 2022 Hr'g Tr. at 8–9.)  His assistance in the early stages of the litigation led to Defendants abandoning the argument that Mr. Kyem and other members of the proposed collective were FLSA-exempt employees, thereby greatly increasing the collective's potential for success.  (Doc. No. 50-1 at 12–13.)  And, significantly, Mr. Kyem is still employed by Defendants, so he faced substantial personal and professional risk in prosecuting this lawsuit.  (*Id.* at 18.)  Finally, the proposed service award is relatively small.  The $3000 payment represents roughly 2.5% of the total recovery in this matter.  Courts have regularly approved similar service awards in FLSA cases. *See Young v. Tri Cnty. Sec. Agency, Inc.*, Civil Action No. 13-5971, 2014 WL 1806881, at *8

(E.D. Pa. May 7, 2014) (approving an incentive award that was approximately 3.5% of the class's total recovery).

For these reasons, the Court approves the proposed payment of $3000 to award Mr. Kyem for his service as the named plaintiff.

## IV.   ATTORNEYS' FEES AND COSTS

### A.   *Legal Standard*

In the Third Circuit, courts generally favor using the percentage-of-recovery method to compensate counsel in cases brought under the FLSA or state wage and hour laws as a collective action.  *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016). This is because the percentage-of-recovery method encourages efficiency and "rewards counsel for success and penalizes it for failure."  *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 821).  In determining whether the requested fees are reasonable under the percentage-of-recovery method, the Court considers seven factors:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections . . . to the
> settlement terms and/or the fees requested by counsel; (3) the skill
> and efficiency of the attorneys involved; (4) the complexity and
> duration of the litigation; (5) the risk of nonpayment; (6) the amount
> of time devoted to the case; and (7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The Third Circuit has also recommended that courts cross-check an award of attorneys' fees with the lodestar method, which requires the court to compare the attorneys' recovery under the percentage-of-recovery method with the "lodestar."  *Id.*  The lodestar is calculated by "multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the

services provided, and the experience of the lawyer." *Id.* "The [lodestar] crosscheck is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier." *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). "[W]hen the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *Id.* (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)).

### B.   Analysis

Plaintiffs' counsel seeks $41,125.00, or 35% of the settlement amount, in attorneys' fees and $746.63 in costs. (Doc. No. 51-2 at 18.) The Court finds that all seven *Gunter* factors weigh in favor of awarding the requested fees.

First, Plaintiffs' counsel's efforts allowed Plaintiffs to recover over $70,000. Generally, to avoid a windfall to counsel, as the size of a common fund increases, counsel's percentage of recovery should decrease. *See Fein*, 2017 WL 4284116, at *12. The recovery in this case is relatively small (although it represents a significant recovery for each of the four Plaintiffs), and courts have awarded attorneys' fees reflecting the same percentage even where the settlement fund was much larger. *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *9 (E.D. Pa. Sept. 27, 2017) (approving a 35% recovery of attorneys' fees from a settlement fund of $775,000).

Second, none of the Plaintiffs objected to the Proposed Settlement. (Doc. No. 50-1 at 10.)

Third, Plaintiffs' counsel are skilled and litigated this matter efficiently and effectively. Plaintiffs were represented by attorneys Michael Murphy and Michael Groh of the Murphy Law Group. (Doc. No. 51-2 at 2–4.) Plaintiffs' counsel "have significant employment law experience," including experience with wage and hour class and collective actions litigated in

this judicial district.  (*Id.* at 3.)  Indeed, Mr. Groh has litigated and resolved "approximately one hundred . . . individual and/or collective/class action lawsuits arising under federal and state wage laws."  (*Id.*)

Fourth, Plaintiffs' counsel have litigated this case for over two years and have "engaged in significant written discovery, motion practice . . . , extended discussions regarding the nature and constitution of the proposed collective, the exchange of thousands of pages of relevant documents and information, and prolonged, arms-length settlement negotiations."  (Doc. No. 51-1 at 13.)  This case involved complex factual and legal issues, such as whether Defendants knew Plaintiffs were performing but not recording the non-billable activities detailed in the complaint, whether a two- or three-year statute of limitations applied, whether liquidated damages are applicable under the FLSA, and whether Plaintiffs were FLSA-exempt employees.  (*Id.* at 14.) Significantly, during the course of this litigation Plaintiffs' counsel prevailed on their argument that Plaintiffs were FLSA-exempt employees as Defendants' counsel conceded this issue.  (*Id.*)

Fifth, Plaintiffs' counsel accepted this case on a wholly contingent basis, so the risk of non-payment has been high throughout this litigation.  (*Id.*)  In any contingency case, there is a risk of non-payment, and that risk is even more so in cases such as this one where the defendants have colorable defenses sounding in fact and law.  (*See supra* Section II.B.2.)

Sixth, Plaintiffs' counsel dedicated a significant amount of time to litigating this matter: they have investigated Plaintiffs' claims, conducted discovery, briefed the collective action certification motion, and negotiated the settlement.  (Doc. No. 50-1 at 19.)  Significantly, Plaintiffs' counsel got Defendants to agree for the purposes of calculating the settlement that

Plaintiffs expended approximately 18 minutes of non-billable work for every 60 minutes of billable work.[3]  (Feb. 2, 2022 Hr'g Tr. at 3–4.)

Finally, the 35% award is similar to what our sister courts have awarded in like cases.  In the Third Circuit, courts using the percentage-of-recovery method to calculate attorneys' fees generally approve of fees ranging "from roughly 20–45%."  *Marby v. Hildebrandt*, Civil Action No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases).  Other courts have awarded attorneys' fees totaling 35% of the total settlement amount in similar wage and hour cases.  *See, e.g.*, *Tompkins*, 2017 WL 4284114, at *9 (awarding attorneys' fees in the amount of 35% of total settlement award); *Nwogwugwu v. Spring Meadows at Lansdale, Inc.*, CIVIL ACTION NO. 16-2663, 2017 WL 2215264, at *3 (E.D. Pa. May 18, 2017) (same).

In addition to the *Gunter* factors all weighing in favor of awarding the requested attorneys' fees, a lodestar cross-check also confirms the reasonableness of their request.  Mr. Murphy expended 24.25 hours on this litigation at an hourly rate of $475.00 for $11,518.75 in total fees.  (*Id.*)  Mr. Groh expended 66.33 hours on this litigation at an hourly rate of $295.00 per hour for $19,567.35 in total fees.  (*Id.*)  Together, Plaintiffs' counsel accrued $31,086.10 in fees based on the lodestar method.  (*Id.*)  They are requesting $41,871.63 in fees under the percentage-of-recovery method, which is approximately 1.35 times more than under the lodestar method.  The lodestar multiplier of 1.35 falls well within the range of reasonableness and confirms the reasonableness of the requested fees.  *In re AT&T*, 455 F.3d at 172–73 ("[W]e think a multiplier of 1.28 is well within a reasonable range."); *Anderson v. Liberty Healthcare Corp.*, No. 2:20-cv-03014-RAL, 2021 WL 6752257, at *2 (E.D. Pa. Nov. 22, 2021) ("Moreover, the

---

[3] Although Defendants agreed to this ratio for the limited purpose of calculating the settlement, they contend the correct calculation is much closer to 6 minutes than 18 minutes.  (Feb. 2, 2022 Hr'g Tr. at 4–5.)

fee's reasonableness is further confirmed by submissions indicating that it results in an acceptable 'lodestar multiplier' of 1.82 when compared to Plaintiffs' counsel's reported lodestar using hourly rates described in the Philadelphia Community Legal Services fee schedule.").

The Court also finds that Plaintiffs' request for $746.63 in costs expended by counsel is reasonable.

## V.    CONCLUSION

For the reasons above, Plaintiffs' Unopposed Motion for an Order Approving the Settlement Agreement and Granting a Service Award (Doc. No. 50) and Plaintiffs' Unopposed Motion for an Order Awarding Attorneys' Fees and Reimbursement of Expenses (Doc. No. 51) are granted.  An appropriate Order follows.